The Chief Justice

delivered the Opinion of the Court.
By the fourth section of an act of 1830, the Legislature granted to the city of Louisville “all fines and pe-“nalties inflicted before the Jefferson Circuit Court, the “Mayor of the city of Louisville, or any Justice of the “Peace, for offences arising within” that city, to be appropriated to “the use and benefit of the public schools thereof”—Session acts 1829-30, p. 260.
An act of 1835 established a Chancery Court in and for the city of Louisville, fixed the Chancellor’s salary at fifteen hundred dollars, “ payable quarterly,” out of the public Treasury of the Commonwealth; and also provided that it should “be the duty of the Mayor and Coun"cil of the city of Louisville, to pay into the public “Treasury, annually on the first day of January, in each ‘‘year, the sum of five hundred dollars, out of the fines “assessed in the Mayor’s Court”—Session acts of 1835, p. 414.
By an act of 1836, the Mayor’s Court of the said city was abolished, and in lieu of it, a “Police Court” was established; to “be held by a single judge, to be ap “pointed as other judicial officers of the State,” and to be entitled to“ an annual salary of twelve hundred dollars, payable quarterly, out of the Treasury of this Commonwealth;” and it was also enacted, “that, in con ‘‘sideration of the fines and forfeitures recovered in favor “of the Commonwealth in said Court, which are hereby ‘‘granted to the city of Louisville, for the benefit of the “public schools of said city; it shall be the duty of said “ city, on the first day of December next, and on the first “day of December in each succeeding year, to pay into *71 "the Treasury of this Commonwealth, the sum of twelve “hundred dollars, in addition to the sum heretofore di“rected to be paid; and, on failure to pay said sums, the “ Auditor shall proceed to coerce the same from the said “city, in the same manner as directed against the collec “tors of the public revenue.”—Session acts of 1836, p. 280-1.
In 1837, the Legislature increased the salary of the Circuit judge for the fifth judicial district, including Louisville, to two thousand dollars, and that of the Chancellor of that city, from fifteen hundred dollars to three thousand; and enacted that, ‘‘in consideration thereof, “the city of Louisville shall pay into the Treasury of “this Commonwealth, the sum of fifteen hundred dol “lars, in addition to the five hundred, which said city “pays under the act establishing the Louisville Chancery “ Court.”—Session acts of 1837, p. 238.
And by an act of 1838, it was enacted, “that the fines “and forfeitures accruing in the Police Court of Louis‘‘ville, after the payment of three thousand two hundred dol“lars, required to bepaid out of the same into the public “Treasury, shall be a fund to pay the grand and petit “jurors in said Court.”—Session acts of 1838, p. 242.
The city of Louisville having, for the year 1838, paid into the public Treasury, only the sum of twelve hundred dollars, as required by the act of 1836, and two hundred and fifty four dollars and twenty eight cents of the sum of five hundred dollars required by the act of 1835, a motion was made against the corporation, by the Auditor, for a judgment for the residue of the five hundred dollars, to wit: two hundred and forty six dollars and seventy-two cents; and also, for the whole fifteen hundred dollars required to be paid by the act of 1837.
The city appeared, and on the trial, insisted that there was no legal obligation to pay for the year 1838, a greater sum than had been collected out of the fines and forfeitures assessed for that year; and proved that the fines and forfeitures assessed for 1838, in the Police Court, amounted to only $8,622 44; that the Governor had remitted $3,055 50 of that amount; that of the residue, only $1,453 28 had been collected, and that not more *72 than four hundred and fifty dollars of the uncollected balance would be collectible.
But the General Court, in which the motion was made, rendered a judgment against the city of Louisville, for one thousand seven hundred and forty-six dollars and seventy-two cents, and eighteen per cent. interest, thereon, from the first of January, 1839, until paid, and that judgment is now to be revised.
The main question to be considered is whether, according to a proper interpretation of the foregoing enactments, the city is liable, annually, for the thirty-two hundred dollars, or any portion of it, independently of the amount that shall have been collected of the fines and forfeitures assessed in the Police Court; or, in other words, whether or not the city is the mere collector of the Commonwealth, and is required only to pay out of the amount which shall have been or may be collected.
The act of 1835, requiring the annual payment of five hundred dollars, literally imports that it shall be made out of the fines and forfeitures assessed in the Mayor's Court; and if that enactment should be construed as if it were the only one, we should perhaps decide that the city would not be liable for the five hundred dollars, unless as much as that amount of fines and forfeitures shall have been collected, or shall be collectible, even though a greater amount had been assessed. The same process of isolated construction would, in our opinion, lead to the conclusion that the enactment of 1836, requiring the annual payment of twelve hundred dollars, and that of 1837, requiring the annual payment of fifteen hundred dollars, subject the city to liability for these respective sums annually, whether as great an aggregate amount, or any amount, of the assessed fines and forfeitures had been collected or not.
The act of 1836, substituted a tribunal unquestionably constitutional, for one whose judicial authority had been seriously doubted, and the whole expense incident to which had been devolved on the city, because the Mayor’s Court was exclusively a municipal Court; and therefore, nothing appearing to the contrary, it would not be unreasonable to presume that, in requiring the city to *73 pay annually an amount equal to that given by the act, to the substituted city judge, the Legislature intended that the city should, indirectly and ultimately, pay his salary, as it had before paid, directly, that of its Mayor.
But this enactment, unlike that of 1835, as to a portion of the Chancellor’s salary, declared, not, as that did, that the prescribed sum should be paid “out of the fines,” &c., but “in consideration of the fines and forfeitures recovered,” and given to the city; from which alone we should infer, that the Legislature intended that the liability to pay the twelve hundred dollars annually, should not depend on the collection of that amount of fines and forfeitures.
The act of 1837, considered by itself, will allow no other interpretation than, that the annual payment of fifteen hundred dollars prescribed by it, is required in consequence only of the augmentation of the salary of the city Chancellor and Circuit Judge; and therefore, that this annual payment should be made by the city, without any reference or regard to the fines and forfeitures assessed in the Police Court.
If we consider the three several enactments in pari materia, as if they had been parts of one single statute, it would, in our judgment, be more reasonable that the literal effect of that of 1835 should yield to, and be deemed to have been merged in, the constructive operation of that of 1836, and the declared object of that of 1837, than that the manifest intention of the two last should be perverted and controlled by the letter of the first. It is not necessary, however, to decide whether the city is liable for the five hundred dollars unconditionally and in any event; because, even if that sum should be payable out of the fines and forfeitures only, it would be the first charge on that fund; and not only was more than that amount actually collected by the city in 1838, but an amount much larger may be expected to be available every successive year.
The provision quoted from the act of 1838, does not, in our opinion, change the effect of those quoted from the acts of 1836 and 1837.
*74 The only object of that provision was to dedicate to a different purpose than that of schools, so much, annually, of the fines and forfeitures as might remain after deducting three thousand two hundred dollars—which the city was permitted to retain to itself, as an indemnity for its annual payment to the Commonwealth, in obedience to the requisitions of the enactments of 1835,6 and 7. We cannot understand it as intending that the entire sum of three thousand two hundred dollars should be paid out of the fines and forfeitures only; but do understand it as meaning merely that the annual debt to be paid by the city to the Commonwealth, should be a charge on the fund arising from fines and forfeitures assessed in the Police Court, so as to entitle the city to a credit for that amount, when it had teen paid into the public Treasury, and thereby to reduce the residuary jury fund with which it was to be charged.
By the antecedent enactments, the city was entitled to all the fines and forfeitures, whether assessed by the Mayor, the Police Judge, the Circuit Court, or a Justice of the Peace, for offences committed within the limits of the corporation; but the acts of 1835, 6 and 7, required the city to appropriate to education whatever should remain of the amount of such fines and forfeitures as had been assessed in the Mayor’s or Police Court, after giving itself credit for an amount equal to that which it had paid into the Treasury.
Besides, the words—“required to be paid out of the same,” as used in the act of 1838, should not be entitled to the effect of repealing or changing the prior acts, but as meaning only what they may have intended; and that is, that the city should be permitted to retain out of the fines and forfeitures, an amount equal to whatever it had paid or was required to pay into the Treasury, towards the salaries of its local judges, and should be bound to appropriate to a designated local object, the residue only, and which, therefore, in this sense, fixed by reference to the former enactments on the subject, might be considered as paid “out of the fines and forfeitures,” and even as being “required” to be so paid, as the debt to the State might be deemed a collateral charge on that fund which, with others, had been given to the city.
Two acts of assembly requiring certain sums to be paid into the State treasury by the city of Louisville, give the Gen. Court jurisdiction to enforce the payment; a third act requiring an additional payment, and thereby increasing the aggregate, is silent as to the mode of enforcing it: as the latter act is merely supplemental to the two former, the remedy given by them should be deemed applicable to the other also.
An act requiring the city of Louisville to pay certain sums into the State treasury, directs the Auditor to enforce the payment of those sums “in the same manner as directed against the collectors of the public revenue”—who, in case of delinquency, are liable for current interest at 18 per cent. But the city act (sup.) contains no such provision: held, therefore, that the city is liable to a judgment for those sums only, without penalty or interest.
Moreover, any other interpretation would be rather suicidal; because if the city be liable to the State merely as its collector, then, as the State has surrendered to it all control over the fines and forfeitures, and has provided no sufficient means for ascertaining, either the amount of assessments, or that of collections, no official organ of the State could be required or presumed to know, at the commencement of any year, how much had been assessed or collected, or whether the city was indebted to the treasury, or to what extent; and consequently, whether the city should pay into the treasury the three thousand and two hundred dollars, or any portion thereof, might depend in a great degree on its own will.
Wherefore, we are of the opinion, that the liability of the city in this case, does not depend on the amount of fines and forfeitures actually collected or collectible; and that, therefore, the judgment rendered against it, by the General Court, for one thousand seven hundred and forty six dollars and seventy two cents, is right, if that court had jurisdiction over the whole amount.
The act of 1836 certainly gave to the General Court, jurisdiction as to the sums required to be paid by that act and by the prior act of 1835. The act of 1837, requiring the additional payment of fifteen hundred dollars, is silent as to the mode of enforcing the payment. But, as this latter requisition is merely supplimental or additional, we are of the opinion that the remedy prescribed for enforcing the other payments, should be deemed equally applicable to it also.
But it seems to us, that the General Court erred in rendering judgment for eighteen per cent, current interest. The act of 1836 does not, either expressly denounce any such penalty, or authorize such a judgment. It authorizes the auditor to coerce the payment only of the “sums” (prescribed) “in the same manner as directed "against the collectors of the public revenue.” This does not literally import that any other sum shall be coerced; nor, as to the designated “sums,” does it imply more *76 than that the Legislature intended merely to prescribe a mode of procedure for coercing the payment of them. We do not, therefore, feel inclined to extend the literal construction so as to embrace a penalty.
Wherefore, it is considered that the judgment of the General Court be reversed, and the cause remanded with instructions to render a judgment for seventeen hundred and forty six dollars seventy two cents only.